**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

ONELIA ANN VERA, an individual; and
PERRY KENT LITTRELL, JR., an
individual,

       Plaintiffs,                            Case No.:

v.

NEXO FINANCIAL LLC, a Delaware
limited liability company; and NEXO
INC., a Cayman Islands corporation; and
NEXO CAPITAL, INC., a Cayman Islands
corporation,

       Defendants.

_____/

## **COMPLAINT**

### **DECLARATORY RELIEF, NEGLIGENT MISREPRESENTATION TO INDUCE CONTRACT, FDUTPA, BREACH OF CONTRACT / IMPLIED COVENANT OF GOOD FAITH, NEGLIGENCE**

      COME NOW Onelia Ann Vera, an individual ("Vera"), and Perry Kent Littrell, Jr., an individual ("Littrell") (collectively, Vera and Littrell are the "Plaintiffs"), by and through their undersigned counsel, and sue the Defendants, Nexo Financial LLC, a Delaware limited liability company, Nexo Inc., a Cayman Islands corporation, and Nexo Capital, Inc., a Cayman Islands corporation (collectively, "Nexo" or the "Defendants"), and demand a trial by jury on all counts so triable and allege as follows:

### **Introduction**

      1.      At all times material hereto, the Plaintiffs held the substance of their life savings in the form of cryptocurrency assets and planned to hold those assets in that form over a long-term basis (the Plaintiffs' "Investment Strategy").

      2.      In 2020 and 2021 in response to representations of the Defendants that the Defendants operated lawfully and possessed all necessary licensure and registration, and incentives and perquisites described in this complaint, the Plaintiffs transferred their cryptocurrency assets to the Defendants' platform.

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

3.      In particular, the Plaintiffs were enticed to move their cryptocurrency assets into Nexo's "Earn Interest" accounts offered by the Defendants, because the Defendants represented that the Plaintiffs would earn interest on their cryptocurrency assets while in the Nexo program and that the Plaintiffs were free to transfer any or all of their cryptocurrency assets from this program at any time.

4.      Based on these representations, the Plaintiffs placed substantial cryptocurrency assets into Nexo "Earn Interest" accounts. By the end of 2021, the Plaintiffs, either by transfer or purchase, possessed cryptocurrency assets in Nexo "Earn Interest" accounts collectively valued at approximately Four Million Five Hundred Thousand United States Dollars ($4,500,000.00).

5.      Once the Plaintiffs were Nexo "Earn Interest" account holders, the Plaintiffs were the recipients of numerous communications and representations from Nexo regarding Nexo's desire for the Plaintiffs to purchase "Nexo Tokens" offered by the Defendants. *See, e.g.*, **Exhibit 1**.

6.      As is seen in **Exhibit 1**, the Nexo tokens were marketed as offering both higher interest rate realization than market rates, lower loan interest rate obligations, and made the purchasers of the Nexo Tokens automatic members of "Nexo Loyalty Program" which offered yet even more benefits. Also as is seen in **Exhibit 1**, Nexo enticed the Plaintiffs to not only join the program but to purchase more and more of the Nexo Tokens so that the Plaintiffs could advance to "Nexo Loyalty Program" "Platinum" status which offered returns unmatched in the industry.

7.      In justifiable reliance on the representations of Nexo, the Plaintiffs were fully sold and convinced that they would rely upon the aforementioned Nexo program and borrow funds to purchase Nexo Tokens to become not only members of the exclusive "Nexo Loyalty Program" but also members of the vaunted "Nexo Loyalty Program" "Platinum" status.

Nexo's Free Money

8.      As the hook was set with the enticement to the Plaintiffs to purchase the Nexo tokens, Nexo simultaneously solicited the Plaintiffs with Nexo's "Loan Program."

9.      The Nexo Loan Program was represented to the Plaintiffs as offering loans which would be collateralized by the cryptocurrency in the Plaintiffs' "Earn Interest" accounts. The interest rates charged on the loans were less than the interest that the Plaintiffs were receiving on

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

their cryptocurrency assets in the Nexo Earn Interest Program. Further, and critically, the Plaintiffs were assured that they could "top off" the "Earn Interest" accounts without penalty, at any time, for any reason, and to set-off the cost of the loan through interest earnings on newly added collateral.

10.     Therefore, Nexo offered its Earn Interest Program members an interest free loan as the interest rate on the loan was less than the interest earned in the Earn Interest Program. At the same time, Nexo enticed and solicited its Earn Interest Program members to purchase Nexo Tokens and become members of the Nexo Loyalty Program. Nexo represented that the Nexo Loyalty Program would offer even higher interest rates and lower loan interest rates, or no interest at all as represented in **Exhibit 1**.

11.     The representations and enticements worked exactly as Nexo hoped.

12.     So convinced were the Plaintiffs in justifiable reliance on the representations and enticements of Nexo, that commencing in July of 2021, the Plaintiffs took out loans totaling over One Million Dollars ($1,000,000.00) under the Nexo Loan Program and used all those funds to purchase additional cryptocurrency and Nexo Tokens, and placed all of those assets in their Nexo Earn Interest Program wallet.

13.     As a result, as of July of 2021, the Plaintiffs became "Nexo Loyalty Program" "Platinum" members with all the perquisites and benefits of such elite status as promised by Nexo.

14.     But for the representations of Nexo, the Plaintiffs would not have borrowed funds from the Nexo Loan Program to purchase cryptocurrency assets and Nexo Tokens which were placed in their Earn Interest Program wallet.

The Problem With Nexo's Free Money

15.     What Nexo failed to tell the Plaintiffs throughout these enticements and solicitations was that the Nexo Earn Interest Program was illegal. And Nexo was fully aware of the fact that it was illegal at the time that the Plaintiffs were enticed into taking out the Nexo loan to purchase Nexo Tokens and become "Nexo Loyalty Program" "Platinum" status because Nexo was already notified by several governmental agencies that the Earn Interest Program violated US and State securities laws.

16.     In fact, on December 5, 2022, Nexo announced that, despite negotiating with the

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
Primary Email: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., Jschwartz2law.com

SEC and State Attorneys General for "more than 18 months," it was leaving the US market as a result of its failed attempt to resolve their outstanding legal issues with the SEC and state regulators. *See* **Exhibit 2**. The "more than 18 months" of negotiation referenced by Nexo transpired at the same time that Nexo was enticing Plaintiffs to: (i) participate in the illegal Earned Interest Program; (ii) use crypto currencies participating in the Earned Interest Program as collateral for loans under Nexo's Loan Program; and, (iii) purchase Nexo tokens in large quantities to qualify for the Nexo Loyalty Program Platinum Status, which purported to increase the interest earned under the illegal Earned Interest Program and reduce the interest payable under the Loan Program.

17.     This information was not directed to the Plaintiffs until February 19, 2022, at which time Nexo advised the Plaintiffs that the "Earn Interest" program was being terminated in response to enforcement actions by the U.S. Securities and Exchange Commission in a parallel and identical account program, and that the Plaintiffs would no longer be able to rely upon new deposits going into the "Earn Interest" program to pay interest.

18.     Furthermore, on January 23, 2023, Nexo notified Vera that "[a]s a resident of Florida, we would like to inform you that Nexo will be discontinuing its Exchange Service in your state as well as the issuance of **new** crypto-backed credit lines effective **January 20, 2023, at 10:00 EST/ 9:00 CST** in line with our gradual departure from the US market." **Exhibit 3**. Apparently, non-Florida residents in the United States are not affected by this notice.

19.     In sum, Nexo advised customers on or about February 19, 2022 that the "Earn Interest" program was illegal and that the interest on their loans, which the Defendants had promised could and would be paid using proceeds from assets placed into the "Earn Interest" program, would no longer be able to be paid by new deposits. This news was seismic as any significant downturn in the value of cryptocurrency would nullify the reason that the Plaintiffs borrowed the funds from Nexo to buy Nexo Tokens in the first instance.

20.     Had the Plaintiffs been notified that the "Earn Interest" program was illegal, the Plaintiffs never would have transferred their cryptocurrency assets to the Defendants in the first instance.

21.     Had the Plaintiffs been notified that the "Earn Interest" program was illegal, the Plaintiffs never would have agreed to participate in the Defendants' "Loan Program" or taken any

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

loans from the Defendants in the first instance.

22.     Had the Plaintiffs known that new deposits into the "Earn Interest" program would be precluded as a result of this illegality, and thus that the Plaintiffs would not be able to continue to rely on the "Earn Interest" program to offset the costs of the "Loan Program," the Plaintiffs never would have agreed to participate in the Defendants' "Loan Program" or taken any loans from the Defendants in the first instance.

23.     The result of the illegal conduct and misrepresentations by the Defendants, both express and by omission, is that the Plaintiffs were misled into placing their cryptocurrency assets into accounts that are burdened by debt that the Plaintiffs never bargained for and are controlled by the Defendants. Resulting in, among other things, the Defendants unlawfully and improperly liquidating Vera's assets

### **Parties**

24.     Vera is an individual resident of Broward County, Florida.

25.     Littrell is an individual resident of Puerto Rico, who resided in Broward County, Florida at the time he took out his loan with the Defendants.

26.     Defendant Nexo Inc. ("Nexo Parent") is a Cayman Islands corporation formed in 2018. Nexo Inc., is the parent company of the Nexo Group, which includes various subsidiaries and affiliates. Nexo Inc. is not registered to do business in Florida, and is not registered with the Florida Dep't of Business and Professional Regulation or the Florida Department of Financial Services. Nexo Parent has an address of Two Artillery, 161 Shedden Road, 2nd Floor, George Town, P.O. Box 799, Grand Cayman KY KY1-1103, and its principal place of business in London, England at 1 Canada Square Floor 39, Canary Wharf.

27.     Nexo Capital, Inc. ("Nexo Capital") is a Cayman Islands corporation that is wholly owned by Nexo Parent. Nexo Capital owns and, in conjunction with Nexo Parent and Nexo Financial, operates Nexo's public website and mobile smartphone application. Nexo Capital is not registered to do business in Florida, and is not registered with the Florida Dep't of Business and Professional Regulation or the Florida Department of Financial Services. Nexo Capital has an address of Two Artillery, 161 Shedden Road, 2nd Floor, George Town, P.O. Box 799, Grand Cayman KY KY1-1103, and its principal place of business in London, England at 1 Canada Square

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
Primary Email: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com    Jonathan Schwartz, Esq., Jschwartz@jonschwartzlaw.com

Floor 39, Canary Wharf.

28.     Nexo Financial LLC ("Nexo Financial") is a Delaware limited liability company that is wholly owned by Nexo Parent and is registered to do business in Florida. Nexo Financial has an address in London, England at 1 Canada Square Floor 39, Canary Wharf.

29.     Nexo Parent, Nexo Capital and Nexo Financial collectively operate and maintain the Nexo website and offer the Nexo services advertised on that website and through the Nexo whitepaper, and are thus subject to single-enterprise liability.

30.     There is such a unity of interest and ownership among these entities that any separate corporate personalities are merged, such that one corporation is a mere adjunct of another and they form a single enterprise.

31.     Inequitable results would follow if the misconduct and acts in question in this action were treated as those of any one corporate entity alone.

### Jurisdiction and Venue

32.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of citizenship between the Plaintiffs, on the one hand, and the Defendants, on the other hand.

33.     The amount in controversy, without interest and costs, exceeds $75,000.00.

34.     This Court has personal jurisdiction over the Defendants, operating as a single enterprise, with each corporate entity acting as the agent of the other, because for purposes of inducing the Plaintiffs to take the Loans, as defined herein, the Defendants solicited and solicit customers including the Plaintiffs through substantial contacts with and in the Southern District of Florida; and because the Plaintiffs' claims arise out of the business that the Defendants conducted and the substantial contacts that they maintained with the Southern District of Florida and it is the Southern District of Florida in which in which a substantial part of the events or omissions giving rise to the claims occurred.

35.     The Defendants conducted such business and targeted the Plaintiffs in the Southern District of Florida, and all of the Plaintiffs' acts and transactions with the Defendants occurred in the Southern District of Florida.

36.     The Plaintiffs' involvement in the transactions and financial losses were the result

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

of targeted promotions and activity both telephonically and electronically directed to the Plaintiffs in the Southern District of Florida.

37.     In sum, Nexo Financial was registered to do business in Florida and did business in the Southern District of Florida with the Plaintiffs and the Defendants' contacts with the Southern District of Florida was not and do not result from the Defendants' random, fortuitous, or attenuated contacts with the Southern District of Florida, or from the Plaintiffs' unilateral activity.

38.     In addition to such substantial contacts that the Defendants directed towards the Southern District of Florida, giving rise to the Plaintiffs' claims, the Defendants are fairly and reasonably subject to personal jurisdiction in the Southern District of Florida because they have availed and subjected themselves to registering to conduct business in Florida through Nexo Financial.

39.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because, as explained *supra*, a substantial part of the events giving rise to the Plaintiffs' claims occurred in the Southern District of Florida.

40.     All conditions precedent have occurred or have been waived.

### General Allegations

A.     THE NEXO "EARN INTEREST" PROGRAM WAS ILLEGAL AND THE PLAINTIFFS WERE MISLED ABOUT THE LEGALITY OF THE PROGRAM FROM INCEPTION.

41.     In or around April of 2021, the Plaintiffs held investment program accounts with the Defendants under their "Earn Interest Program" (the Defendants' "Earn Interest Program"), wherein individuals with cryptocurrency assets held on the Nexo Platform could allow the Defendants to utilize these assets in exchange for interest payments (the Earn Interest Program "Interest Payments").

42.     The Plaintiffs participated in the Earn Interest Program because it was represented to them to be consistent with the Plaintiffs' paramount investment objective to hold their cryptocurrency assets for many years to realize what they expect will be the significant appreciation of these assets. The Defendants marketed to the members of the Earn Interest Program, like the Plaintiffs, various perquisites. The Defendants aggressively marketed a borrowing program (the Defendants' "Loan Program"), wherein individuals with cryptocurrency

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
Primary Email: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., JSchwartz@jonschwartzlaw.com

assets in the Defendants' Earn Interest program could, pledging some of the assets currently in the Earn Interest Program as collateral, borrow United States Dollars or stable coin equivalents.

43.     The Loan Program was represented to the Plaintiff's to be a no-cost loan, as the Earn Interest Program Interest Payments could be used to cover the interest on the Loans.

44.     This offering of the Defendants, which tied the Earn Interest Program to the Loan Program is referred to collectively herein as the Defendants' "Investment/Loan Program."

45.     At all times the Defendants represented to the Plaintiffs, through targeted advertising directly to the Plaintiffs, that the Defendants' operation, including their Earn Interest Program, was fully lawful and compliant with all relevant regulation and that the Defendants held all necessary licenses and registrations.

46.     Those representations were false, and the Defendants knew or should have known that they were false.

47.     On February 14, 2022, the United States Securities and Exchange Commission (the "SEC") announced a settled enforcement action charging BlockFi Lending LLC with failing to register its interest-bearing cryptocurrency lending product, which operated identically [1] as the Defendants' Earn Interest Program, i.e., as a security. In sum, BlockFi violated the law by failing to register itself as an investment company and making false statements about its product.

48.     The February 14, 2022 Order issued by the SEC found that "[b]ased on the facts and circumstances set forth below, the BIAs (as defined in the footnote below) were securities because they were notes under *Reves v. Ernst & Young*, 494 U.S. 56, 64-66 (1990), and its progeny, and also because BlockFi offered and sold the BIAs as investment contracts, under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), and its progeny[] . . . ." Order Instituting Cease-and-Desist

_____

[1] "In 2019, BlockFi began offering BlockFi Interest Accounts ("BIAs"), which are essentially interest-bearing digital asset accounts. With these accounts, a customer loans crypto assets to BlockFi and, in exchange, is promised a variable monthly interest payment based on the yield BlockFi generates by pooling BIA investors' crypto assets and deploying them in various ways, such as lending crypto to institutional borrowers, providing crypto staking services, purchasing crypto asset trust shares and interest in private funds, and investing in equities and futures. With limited exceptions, customers are entitled to recoup their loaned assets and accumulated interest on demand." *SEC Takes Aim at Crypto Lending in BlockFi Settlement; Calls on Market to "Come into Compliance": Is Regulatory Clarity Coming Soon?*, CLEARY GOTTLIEB STEEN & HAMILTON LLP, *available* at https://www.clearygottlieb.com/news-and-insights/publication-listing/sec-takes-aim-at-crypto-lending-in-blockfi-settlement-calls-on-market-to-come-into-compliance-is-regulatory-clarity-coming-soon#_ftn9 (February 28, 2022).

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
PRIMARY EMAIL: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., JSchwartz@jonschwartzlaw.com

Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 9(f) of the Investment Company Act of 1940, Making Findings, and Imposing a Cease-and-Desist Order [hereinafter, the "BlockFi Order"], ¶ 2 Administrative Proceeding File No. 3-20758 (Sec. and Exch. Comm'n, Feb. 14, 2022).

49.     The Order reasoned that

BlockFi promised BIA investors a variable interest rate, determined by BlockFi on a periodic basis, in exchange for cyrpto assets loaned by the investors, who could demand that BlockFi return their loaned assets at any time. BlockFi thus borrowed the crypto assets in exchange for a promise to repay with interest. Investors in the BIAs had a reasonable expectation of obtaining a future profit from BlockFi's efforts in managing the BIAs based on BlockFi's statements about how it would generate the yield to pay BIA investors interest. Investors also had a reasonable expectation that BlockFi would use the invested crypto assets in BlockFi's lending and principal investing activity, and that investors would share profits in the form of interest payments resulting from BlockFi's efforts. BlockFi offered and sold the BIAs to the general public to obtain crypto assets for the general use of its business, namely to run its lending and investment activities to pay interest to BIA investors, and promoted the BIA as an investment. ***BlockFi offered and sold securities without a registration statement filed or in effect with the Commission and without qualifying for an exemption from registration; as a result, BlockFi violated Sections 5(a) and 5(c) of the Securities Act.***

BlockFi also made a materially false and misleading statement on its website . . ., concerning its collateral practices and, therefore, the risks associated with its lending activity. As a result, . . . ***BlockFi violated Sections 17(a)(2) and 17(a)(3) of the Securities Act.***

In addition, . . . ***BlockFi operated as an unregistered investment company because it is an issuer of securities engaged in the business of investing, reinvesting, owning, holding, or trading in securities and owning investment securities, as defined by Section 3(a)(2) of the Investment Company Act***, having a value exceeding 40% of its total assets (exclusive of Government securities and cash items). ***BlockFi violated Section 7(a) of the Investment Company Act by engaging in interstate commerce while failing to register as an investment company with the Commission.***

*Id.* at ¶¶ 2-4 (emphasis added).

50.     At all times material hereto, the Defendants did not, and do not, have a registration statement filed or in effect with the SEC, nor do they qualify for an exemption from registration.

51.     At all times material hereto, the Defendants, as detailed herein, made materially false and misleading statements on their website targeted at the Plaintiffs as "Earn Interest"

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM  JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

program participants concerning their collateral practices and the risks associated with their lending activity.

52.     At all times material hereto, the Defendants engaged in interstate commerce while failing to register as an investment company with the SEC.

53.     Businesses offering cryptocurrency products to the public in Florida are treated as Money Service Businesses ("MSBs") for regulatory purposes, as MSBs are defined in Section 560.103(23) of the Florida Statutes, and must be licensed.

54.     At all times material hereto, the Defendants were not registered for any licenses with the Florida Department of Financial Services or the Florida Department of Business and Professional Regulation.

55.     Thus, the Defendants were operating illegally under United States and Florida law when transacting with the Plaintiffs in the "Earn Interest" program  and the tethered Loans.

56.     As a result of the declaration of illegality in the BlockFi Order, which was a *de facto* declaration of illegality of the Earn Interest Program, Nexo terminated and precluded deposits into its Earn Interest Program on February 19, 2022 because the Earn Interest Program did not, could not and never did comply with the law, thereby preventing the Plaintiffs from relying on and adding assets into the "Earn Interest" program to offset the costs of the Loans as was represented to them by the Defendants that they could.

57.      As to those individuals in the Investment/Loan Program, like the Plaintiffs, when the termination occurred, the Plaintiffs could no longer place deposits into the "Earn Interest" program to offset the costs of the Loans. Worse, the Defendants had the authority to liquidate the assets in the event that the Plaintiffs did not pay their interest, or the value of the collateral dropped.

B.     THE PLAINTIFFS' LIFE SAVINGS AND INVESTMENTS WERE PLACED INTO THE DEFENDANTS' EARN INTEREST PROGRAM BASED ON THE DEFENDANTS' REPRESENTATIONS.

58.     Vera built significant wealth intended as her retirement savings which was held in the form of various cryptocurrencies and stored in a wallet on the Defendants' platform (Vera's "Wallet").

59.     In or around April, May and June of 2021, Vera's Wallet held assets valued at

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
PRIMARY EMAIL: eservice@richardbaronlaw.com
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., JSchwartz2@jonschwartz2law.com

roughly Three and One-Half Million United States Dollars ($3,500,000.00).

60.     Based on the representation of the Defendants as above detailed, Vera placed these savings into the Defendants' Earn Interest Program.

61.     Littrell also built wealth intended as his retirement savings which was held in the form of various cryptocurrencies and stored in a wallet on the Defendants' platform (Littrell's "Wallet") (collectively, Vera's Wallet and Littrell's Wallet are the Plaintiffs' "Wallets").

62.     In or around April, May and June of 2021, Littrell's Wallet held assets valued at roughly One Million United States Dollars ($1,000,000.00), which Littrell placed into the Defendants' Earn Interest Program based on the Defendants' representations.

63.     The Plaintiffs believed that their cryptocurrency assets would realize significant appreciation and earn substantial interest based on the representations of the Defendants. It was this investment strategy based on those representations that led the Plaintiffs to rely on the representations of the Defendants and place their life savings into the Earn Interest Program.

C.     THE PLAINTIFFS WERE TARGETED AND CONVINCED BY THE DEFENDANTS TO BORROW MONEY FROM THE DEFENDANTS, SECURED BY THE PLAINTIFFS' CRYPTOCURRENCY, ONLY BECAUSE OF THE REPRESENTATIONS OF THE DEFENDANTS THAT THE EARN INTEREST PROGRAM AND THE PURCHASE OF NEXO TOKENS COULD BE RELIED UPON TO OFFSET THE INTEREST ON THE LOANS.

64.     Having the benefit of knowing the extent of assets in the Plaintiffs' Wallets, the Defendants aggressively targeted the Plaintiffs, through the internet and their individual, password protected Platform accounts, with multiple offers to participate in the Defendants' Loan Program and take Loans in United States Dollars. The Loans would be secured by their cryptocurrency currently in the Earn Interest Program which could be relied upon to offset the interest charged by the Defendants on the loan. The result: cost-free loans to the Plaintiffs – the Defendants' Investment/Loan Program.

65.     The Defendants' Investment/Loan Program was attractive to the Plaintiffs given their paramount investment objective of maintaining ownership of their underlying cryptocurrency assets for expected appreciation. The Plaintiffs relied on the Defendants representations that the interest payments on the loans could be offset by the "Earn Interest" program.

66.     The Plaintiffs' only requirement would be to made sure that the loan-to-value ratio

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ.,, JSCHWARTZ@JONSCHWARTZLAW.COM

threshold of 83.33% (the "LtV Threshold") was not exceeded on any Loans taken.

67.     The Plaintiffs took the Defendants at their word and entered the Defendants' Investment/Loan Program in July of 2021.. Over the coming months, the Plaintiffs borrowed just over One Million Dollars ($1,000,000.00). After February 19, 2022, Plaintiffs became aware that the Defendants' Investment/Loan Program was relying on illegal conduct.

68.     As of Nexo's February 19, 2022 announcement, the "Earn Interest" program was terminated and Plaintiff could not tender new deposits into the "Earn Interest" Program to generate interest and offset the costs of the Loans.

69.     At all times up to and including February 19, 2022 Defendants represented to the Plaintiffs that they operated lawfully and held all necessary licenses and registrations; when they knew they did not.

70.     The Defendants knew or should have known that they did not operate lawfully including not holding the necessary licenses and registrations at all times material hereto, including at the time of making the loans to the Plaintiffs.

71.     Since February 19, 2022, as a result of their reliance upon the illegal Earn Interest Program no longer accepting new assets, the Plaintiffs have been forced to bear the interest on their loans without any set-off from the Earn Interest Program.

72.     The Defendants convinced the Plaintiffs they could rely on by doing business with the Defendants which resulted in the exact opposite of their Investment Strategy.

D.     DESPITE REQUEST, THE DEFENDANTS HAVE FAILED TO PROVIDE THE PLAINTIFFS WITH ANY CONTRACTS REGARDING THE "EARN INTEREST" PROGRAM OR THE LOAN PROGRAM.

73.     The contracts governing the Plaintiffs' participation in the Defendants' Earn Interest Program and Loan Program, if they exist, are not in the possession of the Plaintiffs but are in the possession of the Defendants. The Defendants have been requested to produce the contracts either signed by the Plaintiffs or otherwise in effect when the Plaintiffs entered the Loan Program but have not been supplied the documents.

74.     Indeed, the Plaintiffs have been advised that the contracts are contained on the Defendants' website, but those contracts have been modified unilaterally by the Defendants multiple times over the course of 2022.

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

75.     To the extent that there was a contract with expressed terms between the Plaintiffs and the Defendants, that contract would have been that on the Defendants' website at the time of the Plaintiffs' entries into the Earn Interest Program and the Loan Program.

76.     To the extent that there was an operative written agreement or agreements between the Plaintiffs and the Defendants, the Plaintiffs contend that it was void, voidable, or induced by misrepresentation.

77.     To the extent that there was an operative written agreement between the Plaintiffs and the Defendants, the Plaintiffs contend that any forum-selection clause applicable to this lawsuit was so ambiguous as not to exist. Indeed, a version of the "terms and conditions" in existence at the time the Plaintiffs viewed them during the initial attempts to recoup their funds called for a "Nexo jurisdiction" which obviously does not exist.

78.     To the extent that there was an operative written agreement or agreements between the Plaintiffs and the Defendants, the Plaintiffs contend that any dispute resolution clause was equally ambiguous and not binding. A version of the "General Terms," the "Borrow Terms and Conditions" stated that "[a]ny dispute arising out of or in connection with the Agreement (the General Terms), unless amicably settled between the Parties, shall be referred to the competent court or other dispute resolution authority, determined as per the procedural law of Nexo jurisdiction."

79.     These General Terms, however, nowhere define "Nexo jurisdiction." On this basis alone, properly interpreted against the Defendants, the Nexo Borrow Terms and Conditions contain no enforceable forum-selection clause governing the parties' dispute arising out of or relating to the Loans.

80.     The Loans advertised and solicited by the Defendants to the Plaintiffs were lines of credit, the maximum amounts of which fluctuated based upon the value of the assets in the Plaintiffs' Wallets.

81.     Vera's Wallet value met or exceeded Three and One Half Million United States Dollars ($3,500,000.00) in or around April of 2021 when Vera agreed to take a loan from the Defendants resulting in a line of credit (Vera's "LoC") at that time exceeding One Million United States Dollars ($1,000,000.00).

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

82.     Over the coming months, Vera borrowed over Eight Hundred Thousand United States Dollars ($800,000.00) from the Defendants against Vera's LoC (the "Vera Loan"), which Vera Loan was secured by the assets in Vera's Wallet and the interest on which Vera Loan would be paid for utilizing the Defendants' Loan Program.

83.     Littrell's Wallet value met or exceeded One Million United States Dollars ($1,000,000.00) in or around April to June of 2022 when Littrell agreed to take a loan from the Defendants resulting in a line of credit (Littrell's "LoC") at that time exceeding Five Hundred Thousand United States Dollars ($500,000.00).

84.     Over the coming months, Littrell borrowed a total of Two Hundred Thirty-Six Thousand United States Dollars ($236,000.00) from the Defendants against Littrell's LoC (the "Littrell "Loan") (together, the Littrell Loan and the Vera Loan are the "Loans"), which Littrell Loan was secured by the assets in Littrell's Wallet and the interest on which Littrell Loan would be paid utilizing the Defendants' Loan Program.

85.     One of the conditions of the Loans was that if the loan-to-value ratio ("LtV") of the Loans relative to the value of the Wallets grew above 83.33% (the "LtV Threshold"), then the Plaintiffs would have an opportunity to fund the Wallets sufficiently to bring the LtV below the LtV Threshold, the timely absence of which would result in liquidation of cryptocurrency in the Wallet.

86.     From the inception of the Loan, through and including the filing of this Complaint, the Plaintiffs have complied with the conditions and obligations of their Loans, notwithstanding the cessation of the Earn Interest Program on February 19, 2022.

E.      IN ADDITION TO THE MISREPRESENTATIONS AND ILLEGALITY IN THE INDUCEMENT, VERA WAS PREVENTED FROM STOPPING LOSSES OCCURRING BY THE ACTIONS, INACTIONS AND POLICIES OF THE DEFENDANTS.

87.     On Sunday, June 12, 2022 at 9:58 PM, Vera received an E-mail from the Defendants to "[t]ransfer additional assets now to avoid automatic liquidation." **Exhibit 4**. The message read that "[t]he market is experiencing high volatility levels and the value of your collateral has decreased and your loan-to-value ratio has exceeded **71.43%**. Please be advised that if the loan-to-value ratio increases to **83.33%**, we will initiate partial loan repayments automatically." *Id.*

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
PRIMARY EMAIL: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., Jschwartz@jonschwartzlaw.com

88.     Just over an hour later, the Defendants again e-mailed Vera, this time to advise her that the LtV had exceeded 74.07%. *See* **Exhibit 5**.

89.     A couple of hours after that, now into the wee hours of June 13, 2022, the Defendants sent the same form E-mail once again to Vera, this time advising that her LtV had exceeded 71.43%. *See* **Exhibit 6**.

90.     Not even three (3) hours after that, still in the wee hours of June 13, 2022, the Defendants advised Vera that "[t]his is the final notification about the market value of the crypto assets in your Nexo Account. The market is experiencing high volatility levels and the value of your collateral has decreased and your loan-to-value ratio has increased to **76.92%**." **Exhibit 7**.

91.     Notwithstanding that the Defendants advised that such was a final notification, that day Vera received 17 more similar notices to transfer additional assets to avoid liquidation. *See* **Exhibits 8-24**.

92.     Responsive to the first barrage of these notices, Vera added Fifty Thousand United States Dollars ($50,000.00) to her account with the Defendants at 10:58 AM on June 13, 2022. *See* **Exhibit 25**.

93.     Vera, later in the day, proceeded to place even more money into her account with the Defendants to effectuate an even lower LtV, but Vera was blocked from accessing her account with the Defendants due to a problem with the two factor authenticator the ("2FA"). 2FA is a security mechanism which was highly recommended by the Defendants for Vera to use to secure her account with the Defendants.

94.     Vera contacted the Defendants about this issue, and it is clear that the Defendants knew this was a common issue because they had a form E-mail on hand which they sent to Vera dealing with this exact issue. *See* **Exhibit 26.**

95.     Indeed, the Defendants wrote "[p]lease do not worry as we will be able to help you solve this. . . . [P]lease follow the steps in the following article, as they might resolve your issue: [hyperlink omitted]. If the above is not applicable or does not help resolve your problem, then, ***we will have to disable*** your 2FA authentication for you to access your Nexo account." *Id.* (emphasis added).

96.     The Defendants also requested answers to a number of security questions, and Vera

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
PRIMARY EMAIL: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., JSchwartz@jonschwartz2law.com

obliged. *See id.*

97.     In providing such information, Vera made clear that "[i]t is urgent that [she] have access to [her] Nexo account, as [she] ha[d] a loan that might need to be repaid given market circumstances." *Id.*

98.     Considering that the Defendants sent 22 notices (**Exhibits 1-22**) to Vera essentially over 24 hours warning her of her rising LtV, it is surprising that they did not send one, single notice to her when they liquidated her assets as a result of the LtV exceeding 83.33% – quite literally while she was pleading with the Defendants to let her into her account so that she could "top off" the account to bring the LtV down. *See* **Exhibit 27** (conceding that the Defendants effectuated the liquidation as Vera was attempting to get into her account and contacting the Defendants to resolve same).

99.     As a result of Vera being prevented from "topping off" her account as she did earlier in the morning of June 13, 2022, (**Exhibit 25**), because she was blocked from getting into her account, her account with the Defendants "was liquidated for the equivalent of a total of **$361,293.90** . . . ." **Exhibit 28**.

100.     Due to the Defendant's actions, Vera was prevented from exercising sales and realizing gains on cryptocurrency she owned and has been otherwise damaged.

101.     The Plaintiffs have been required to retain undersigned counsel, to whom they are required to pay a reasonable fee and bear the costs associated with this litigation.

102.     All conditions precedent for bringing this action have been fully performed, waived or excused.

## COUNT ONE
## DECLARATORY RELIEF

### VERA AND LITTRELL V. DEFENDANTS

103.     The Plaintiffs reallege and incorporate paragraphs 1 through 102 as if fully set forth herein, and further allege that:

104.     This is an action for Declaratory Relief pursuant to 28 USC § 2201.

105.     The Plaintiffs entered into Investment/Loan Program agreements (the "Agreements") with the Defendants.

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
Primary Email: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com  Jonathan Schwartz, Esq., Jschwartz@jonschwartz2law.com

106.     The Plaintiffs seek a declaration of rights under those Agreements.

107.     Specifically, the Plaintiffs seek a declaration that the Agreements are void and unenforceable because of illegality and that such agreements are against public policy and void or otherwise voidable.

108.     At all material times in which the Defendants offered or otherwise enticed the Plaintiffs into entering into the Investment/Loan Program Agreements, the Defendants were not operating lawfully at the time of making the Loans as detailed *supra* at ¶¶ 30-38.

109.     Up until February 19, 2022, the Plaintiffs were led to believe, based on the Defendants' misrepresentations, that the Defendants were operating lawfully and held all necessary licenses and registrations.

110.     The actions of the Defendants violated both Florida and Federal law as detailed *supra* at ¶¶ 30-38.

111.     Any Agreements that comprised the Investment/Loan Program between the Plaintiffs and the Defendants were illegal as against public policy and void.

112.     There is a bona fide dispute between the Plaintiffs and the Defendants.

113.     The Plaintiffs have a justiciable question as to the enforceability of the Agreements and the existence or non-existence of their rights under the Agreements.

114.     The Plaintiffs believe that they are entitled to a declaratory judgment declaring the Agreements between the Plaintiffs and the Defendants void as violative of public policy and to be returned to their status prior to the entry into the agreements.

115.     The Plaintiffs are in doubt as to their rights.

116.     As such, there is a bona fide, actual and present need for the requested declaration.

WHEREFORE, the Plaintiffs seek a declaration from this Court that the Agreements are void and unenforceable.

## COUNT TWO
## NEGLIGENT MISREPRESENTATION IN THE INDUCEMENT
### SEEKING RESCISSION OF THE AGREEMENTS
#### VERA V. DEFENDANTS

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

117.    Vera realleges and incorporate paragraphs 1 through 102 as if fully set forth herein, and further alleges that:

118.    The Defendants made false statements regarding material facts relating to the Vera Loan as including:

    A.    From the time Vera took the first tranche of the Vera Loan through and including every disbursement of the Vera Loan, and until February 19, 2022, the Plaintiffs represented to Vera that the Defendants operated lawfully and held all necessary licenses and registrations.

    B.    At the time of advertising the Vera Loan and soliciting it to Vera through the internet and her personal, password-protected Platform with the Defendants, the Defendants caused Vera to believe that their Loan Program, alongside continuous use of their Earn Interest Program core product, would result in Vera having access to an interest free Vera Loan at no risk to Vera or the underlying collateral so long as the Earn Interest Program Interest Payments were sufficient for Vera to set-off the Vera Loan interest payments and the LtV Threshold was not exceeded.

    C.    At the time of advertising the Vera Loan and soliciting it to Vera, the Defendants also made a false statement that Vera would be able to "top off" her account if the LtV approached the LtV Threshold in avoidance of forced liquidation.

(Collectively, ¶¶ 1-20 and 118(A)-(C) are the "Vera Misrepresentations"). The Defendants knew, or should have known, that the Vera Misrepresentations were false and misleading at the time they solicited and issued the Vera Loan.

119.    The Defendants knew, or should have known, that the Vera Misrepresentations were false and misleading at the time they solicited Vera's participation in the Earned Interest Program.

120.    The Defendants knew, or should have known, that the Vera Misrepresentations were false and misleading at the time they solicited Vera's participation in the Loan Program.

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

121.     The Vera Misrepresentations of the Defendants were material.

122.     The Vera Misrepresentations of the Defendants were false, and the Defendants knew or should have known of their falsity.

123.     The Defendants made the Vera Misrepresentations to Vera with the intent to induce reliance by Vera to take the Vera Loan using the Investment/Loan Program so that the Defendants could reap substantial, unjustified fees and other benefits.

124.     Vera justifiably relied upon the Vera Misrepresentations made by the Defendants when soliciting and issuing the Vera Loan and Vera entering into the Investment/Loan Program and "Nexo Loyalty Program".

125.     Vera has been damaged by the Defendants' negligent misrepresentations in the inducement in an amount within the jurisdictional limits of this Honorable Court.

126.     Vera has attempted to rescind the Agreements, but, as noted *supra*, the Defendants are unwilling to provide Vera with the operative Agreements, precluding Vera from being able to rescind the Agreements.

127.     Vera has no adequate remedy at law.

128.     In addition to monetary damages, as a remedy for the Defendants' negligent misrepresentations in the inducement, Vera seeks rescission of the agreements with the Defendants, including the "Earn Interest Program", the Loan Program and other agreements comprising the Investment/Loan Program, and to be placed into her position she held at the time of the actions of the Defendants and her entering into the Investment/Loan Program.

WHEREFORE, Vera demands rescission of the Loan and judgment against the Defendants for damages in an amount within the jurisdictional limits of the Court and respectfully reserves the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. Vera demands a trial by jury on Count II.

<div align="center">

**COUNT THREE**
**NEGLIGENT MISREPRESENTATION IN THE INDUCEMENT**
**SEEKING RESCISSION OF THE AGREEMENTS**
**LITTRELL V. DEFENDANTS**

</div>

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
Primary Email: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., jschwartz@jonschwartz2law.com

129.    The Plaintiffs reallege and incorporate paragraphs 1 through 102 as if fully set forth herein, and further allege that:

130.    The Defendants made false statements regarding material facts relating to the Littrell Loan as follows:

A.    From the time Littrell took the Littrell Loan through and including every disbursement of the Littrell Loan, the Plaintiffs represented to Littrell that the Defendants operated lawfully and held all necessary licenses and registrations.

B.    At the time of advertising the Littrell Loan and soliciting it to Littrell through his personal, password-protected Platform with the Defendants, the Defendants caused Littrell to believe that their Loan Program, alongside continuous use of their Earn Interest Program core product, would result in Littrell having access to an essentially interest free Littrell Loan at no risk to Littrell or the underlying collateral so long as the Earn Interest Program Interest Payments were sufficient for Littrell to set-off the Littrell Loan interest payments and the LtV Threshold was not exceeded.

(Collectively, ¶¶ 1-20 and 130(A)-(B) are the "Littrell Misrepresentations").

131.    The Littrell Loan never exceeded the LtV Threshold as the Vera Loan did.

132.    The Defendants knew, or should have known, that the Littrell Misrepresentations were false and misleading at the time they solicited and issued the Littrell Loan, which is clear as a matter of state and federal law.

133.    The Defendants knew, or should have known, that the Littrell Misrepresentations were false and misleading at the time they solicited Littrell's participation in the Earned Interest Program.

134.    The Defendants knew, or should have known, that the Littrell Misrepresentations were false and misleading at the time they solicited Littrell's participation in the Earned Interest Program.

135.    The Littrell Misrepresentations of the Defendants were material.

136.    The Littrell Misrepresentations of the Defendants were false and therefore the

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZ2LAW.COM

Defendants made misrepresentations and the Defendants should have known of their falsity.

137.   The Defendants made the Littrell Misrepresentations to Littrell with the intent to induce reliance by Littrell to take the Littrell Loan and enter into the Investment/Loan Program so that the Defendants could reap substantial, unjustified fees and other benefits.

138.   Littrell justifiably relied upon the misrepresentations made by the Defendants when soliciting and issuing the Littrell Loan and Littrell entering into the Investment/Loan Program.

139.   Littrell has been damaged by the Defendants' negligent misrepresentations in the inducement in an amount within the jurisdictional limits of this Honorable Court.

140.   Littrell has been unable to obtain the operative Agreements, precluding Littrell from being able to rescind the Agreements.

141.   Littrell has no adequate remedy at law.

142.   As a remedy for the Defendants' negligent misrepresentations in the inducement, Littrell seeks rescission of the agreements with the Defendants, including the "Earn Interest Program", the Loan Program and other agreements comprising the Investment/Loan Program and to be placed into her position she held at the time of the actions of the Defendants and her entering into the Investment/Loan Program.

WHEREFORE, Littrell demands rescission of the Loan and judgment against the Defendants and damages in an amount within the jurisdictional limits of the and respectfully reserves the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. Littrell demands a trial by jury on Count III.

## COUNT FOUR
### FDUTPA

#### PLAINTIFFS V. DEFENDANTS

143.   The Plaintiffs reallege and incorporate paragraphs 1 through 102 as if fully set forth herein, and further allege that:

144.   This is an action against the Defendants for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 501.204 of the Florida Statutes.

145.   Plaintiffs are consumers as defined in FDUTPA.

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
Primary Email: eservice@richardbaronlaw.com
Telephone: (305) 577-4626 / Telefax: (305) 577-4630 /
Jerry Breslin, Esq., JB@RichardBaronLaw.com   Jonathan Schwartz, Esq., Jschwartz@jonschwartz2law.com

146.     Defendants have engaged in a trade or commerce as defined in FDUTPA.

147.     FDUTPA, Section 501.204(1) of the Florida Statutes, declares unconscionable, unfair and deceptive acts or practices in the conduct of any trade or commerce to be unlawful.

148.     The Defendants have engaged in a pattern of acts and practices designed to deceive and induce Florida consumers to take loans like the Loans taken by the Plaintiffs, leading these borrowers to believe that loans like the Loans would effectively be interest-free based on participation in the Defendants' Loan Program which the Defendants represented was lawful and that they held all necessary licenses and registrations for and risk-free so long as borrowers like the Plaintiffs stayed current on the Loan and "topped off" the account if the LtV ever approached the LtV Threshold.

149.     In fact, it was not true that the Defendants' Loan Program would cover the interest of loans like the Loans, and it was not true that borrowers like the Plaintiffs would be able to access their accounts to "top them off" subsequent to receiving notice that loans like the Vera Loan were approaching the LtV Threshold.

150.     Further, it was not true that borrowers like the Plaintiffs would be able to utilize the Loan Program to offset the interest on loans like the Loans, as the Defendants ceased the ability of borrowers similarly situated to the Plaintiffs to use their Loan Program in February of 2022; and at this point, the Defendants continued to collect interest on the Plaintiffs' Loan while ceasing to compensate the Plaintiffs for custodial use of the assets in the Plaintiffs' Wallets pursuant to the promises associated with the Loan Program which induced the Plaintiffs' Loans.

151.     Through false and deceptive business practices, the Defendants have (1) committed acts or practices in trade or commerce, which shock the conscience; (2) engaged in representations, acts, practices or omissions, which are material, and which are likely to mislead consumers acting reasonably under the circumstances; (3) committed acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers; and/or (4) engaged in acts or practices that are likely to cause substantial injury to consumers, which is not reasonably avoidable by consumers themselves or outweighed by countervailing benefits to consumers or competition.

152.     Thus, the Defendants have engaged in unfair or deceptive acts or practices in the

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

conduct of any trade or commerce in violation of Section 501.204(1), Florida Statutes.

153.    The Defendants have willfully engaged in the acts and practices when they knew or should have known that such acts and practices were unfair or deceptive or otherwise prohibited by law.

154.    The Plaintiffs have been damaged by the Defendants' violations of FDUTPA in an amount within the jurisdictional limits of this Court.

155.    The Plaintiffs have retained undersigned counsel and have agreed to pay undersigned counsel a reasonable fee for their services.

156.    The Plaintiffs demand attorney's fees and costs.

WHEREFORE, the Plaintiffs demand judgment against the Defendants for damages in an amount within the jurisdictional limits of this Court, as well as their reasonable attorney's fees and costs as provided in the Florida Statutes. The Plaintiffs demand a trial by jury on this Count IV. The Plaintiffs  reserve the right to amend this complaint to demand punitive damages and join other parties similarly situated, if and as required.

### COUNT FIVE
### BREACH OF CONTRACT / IMPLIED COVENANTS
#### *In the Alternative*
#### VERA V. DEFENDANTS

157.    Vera realleges and incorporates paragraphs 1 through 102 as if fully set forth herein, and further alleges that:

158.    In the event that the Agreements to which Vera and the Defendants were parties in the Investment/Loan Program are not declared null and void, Vera and Defendants are parties to Agreements which include an implied covenant that the parties will perform in good faith and deal fairly.

159.    The Defendants owed Vera a duty of good faith and fair dealing in their performance of their obligations and the exercise of their rights under the agreement.

160.    The Defendants' bad faith, actions and omissions as outlined in this Complaint unfairly interfered with Vera's receipt of the value that it bargained for in the Agreements.

161.    The Defendants, through conscious and deliberate actions, failed or refused to

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

discharge their contractual responsibilities as pled in this Complaint in a commercially fair and reasonable manner.

162.    The Defendants did not comport with and disappointed Vera's reasonable commercial contract expectations and as a result frustrated the purpose of the Agreements.

163.    The Defendants failed to exercise discretion afforded it by the Agreements to act in a reasonable manner.

164.    The Defendants' actions or omissions unfairly interfered with Vera's reasonable expectations under the agreement that the Defendants would act in a commercially reasonable manner.

165.    Vera has at all times acted in good faith.

166.    The Defendants have acted in bad faith.

167.    There were express Agreements between the parties.

168.    The express Agreements included implied covenants of good faith and fair dealing.

169.    The Defendants breached the implied covenants of good faith and fair dealing.

170.    As a direct result of the Defendants' breach and intentional failure to comply with their implied covenants of good faith and fair dealing, as outlined in this Complaint, Vera was prevented from using the Earn Interest Program Interest Payments to pay the interest on the Vera Loan and forced to liquidate cryptocurrency assets to pay ongoing loan interest and also to bring the LtV below the LtV Threshold and continues to be severely damaged.

171.    Vera demands damages from the Defendants for the breach of the implied covenant of good faith and fair dealing.

WHEREFORE, Vera demands judgment against the Defendants for an amount within the jurisdictional limits of this Court. Vera demands a trial by jury on this Count V.

<div align="center">

**COUNT SIX**
**NEGLIGENCE**
*In the Alternative*

**VERA V. DEFENDANTS**

</div>

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM

172.     Vera realleges and incorporate paragraphs 1 through 102 as if fully set forth herein, and further alleges that:

173.     The Defendants undertook to offer to Vera the Investment/Loan Program.

174.     In so doing, the Defendants thereby undertook the duty and obligation to act and administer the Investment/Loan Program in a legal manner and with reasonable care.

175.     The Defendants had a duty to inform Vera of the legality or illegality of their acts.

176.     The Defendants had a duty to act and administer the Investment/Loan Program in a reasonably prudent manner.

177.     Through the exercise of control over the Investment/Loan Program as defined in this Complaint, the Defendants had a duty to undertake policies and programs that were reasonably foreseeable and necessary to meet the demands of the program to permit the participants in the program access to those safeguards to prevent a foreseeable and anticipatable event that would prohibit a participant from minimizing a loss.

178.     The Defendants had a duty to take such precautions as were reasonably necessary and foreseeable to protect its members and participants from those very losses and events described in this complaint.

179.     The Defendants knew, or in the exercise of reasonable care should have known, that its computer triggered sales of Vera's cryptocurrency assets without the ability of human intervention or oversight to prevent a preventable loss.

180.     Because Nexo triggered sales of Vera's cryptocurrency assets, even while Vera was communicating with Nexo representatives, Vera  was precluded from executing a trade to "top off" her account to avoid exceeding the LtV Threshold.

181.     The result being that Vera's cryptocurrency assets were liquidated when reasonable and foreseeable safeguards would have prevented the liquidation.

182.     The Defendants breached their duties to Vera.

183.     As a direct and proximate result of the breach of duty by Defendants, Vera sustained loss of health, financial losses, loss of holdings, loss of value, loss of the ability to manage or administer her account and holdings, loss of earnings and loss of ability to earn money.

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RICHARDBARONLAW.COM   JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZ2LAW.COM

184.    The losses are either permanent or continuing and Vera will continue to suffer losses in the future.

185.    Vera demands damages from the Defendants for the breach of the duty of care by the Defendants.

**WHEREFORE**, Vera demands judgment against the Defendants for an amount in excess of the jurisdictional limits of this Court, Court costs, prejudgment interest, and additionally demands trial by jury on this Count VI and on all issues triable as of right by jury.

Dated:  February 22, 2023.

<div style="margin-left:40%">

**/s/ Jerry Breslin, Esq.**
Jerry Breslin, Esq.
Florida Bar No. 269573
Baron, Breslin & Sarmiento, Attorneys at Law
The DuPont Building
169 East Flagler Street
Suite 700
Miami, FL 33131
Tel.: (305) 577-4626
Fax: (305) 577-4630
E-mails: EService@RichardBaronLaw.com
         JB@RichardBaronLaw.com

**/s/ Jonathan Noah Schwartz, Esq.**
Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Jonathan Schwartz Law PLLC
169 East Flagler Street, Ste. 700
Miami, FL 33131
Tel.: (973) 936-2176
E-mails: Jschwartz@jonschwartzlaw.com
         JNSEsquire@gmail.com

</div>

BARON, BRESLIN & SARMIENTO – JONATHAN SCHWARTZ LAW, PLLC
The DuPont Building, 169 East Flagler Street, Suite 700, Miami, Florida 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 /
JERRY BRESLIN, ESQ., JB@RichardBaronLaw.com    JONATHAN SCHWARTZ, ESQ., JSCHWARTZ@JONSCHWARTZLAW.COM